IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | 8:08CR383 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM AND ORDER |
| DEVIN M. ENRIQUES and MARQUITA JENSEN, | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the court after briefing of a Fifth Amendment issue raised in connection with defendant's motion to continue the trial for unavailability of a witness and on defendant Marquita Jensen's motion for a writ of habeas corpus for the appearance of defendant Devin Enriques at trial, Filing No. 84. Jensen asserts that she intends to compel the attendance of Enriques to appear and testify on her behalf at her jury trial.

The dispute on this point involves the conflict between Jensen's right to call witnesses in her defense and Enriques's right to avoid self-incrimination. Jensen contends that the issues before the court are 1) whether Jensen can compel Enriques to testify; 2) whether Enriques can make a blanket assertion of his fifth Amendment rights and refuse to testify; 3) whether Enriques has waived his Fifth Amendment rights by pleading guilty to all counts; and whether Enriques can be compelled to testify nonetheless.

The Fifth Amendment by its terms prevents a person from being "compelled in any criminal case to be a witness against himself." U.S. Const., Amend. V. The Supreme Court has "broadly construed" the protection afforded by the Fifth Amendment privilege. *Maness v. Meyers*, 419 U.S. 449, 461 (1975); *Hoffman v. United States*, 341 U.S. 479, 486

(1951) (instructing lower courts to give the privilege a "liberal construction"). The importance of the Sixth Amendment right to compulsory process is also integral to our adversarial criminal justice system. To ensure that justice is done, it is imperative to the function of the courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense. United States v. Nixon, 418 U.S. 683, 709 (1974).

"'It is well settled that an accused's right to compulsory process must yield to a witness's Fifth Amendment privilege not to give testimony that would tend to incriminate him or her.'" United States v. Jones, 512 F.3d 1007, 1008-09 (8th Cir. 2008) (*quoting* United States v. Habhab, 132 F.3d 410, 416 (8th Cir. 1997). The determination of whether a potential witness may exercise his or her Fifth Amendment right to remain silent, notwithstanding a criminal defendant's countervailing Sixth Amendment right to compulsory process, is a matter for the trial court's discretion. United States v. Mahasin, 362 F.3d 1071, 1085 (8th Cir. 2004).

As a general rule, where there can be no further incrimination, there is no basis for the assertion of the privilege.[1] Mitchell v. United States, 526 U.S. 314, 326 (1999). If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared. *Id.* The Fifth Amendment privilege protects a witness against "real dangers, not remote and speculative possibilities." Zicarelli v. New Jersey State Comm'n of Investigation, 406 U.S. 472, 478 (1972).

---

[1] That principle applies to cases in which the sentence has been fixed and the judgment of conviction has become final. *Mitchell*, 526 U.S. at 326.

The privilege's protection extends only to witnesses who have reasonable cause to apprehend danger from a direct answer. *Ohio v. Reiner*, 532 U.S. 17, 21 (2001); *Hiibel v. Sixth Judicial Dist. Court of Nevada, Humboldt County*, 542 U.S. 177, 190 (2004) (stating that to claim the Fifth Amendment privilege, a witness must establish a reasonable ground to apprehend danger to the witness from his being compelled to answer). The danger must be real and appreciable—not a danger of an imaginary and unsubstantial character. *Hiibel*, 542 U.S. at 190 (2004).

The determination that a witness has reasonable cause to fear prosecution is an inquiry "for the court; the witness' assertion does not by itself establish the risk of incrimination." *Ohio v. Reiner*, 532 U.S. at 21. The district court "is to review the potential testimony outside the hearing of the jury and order the witness to answer only if it is 'perfectly clear' that the answer cannot possibly' tend to incriminate the witness." *United States v. Smart*, 501 F.3d 862, 866 (8th Cir. 2007); *Hoffman*, 341 U.S. at 488 (stating that an individual's invocation of the privilege against self-incrimination should be honored unless it is perfectly clear that the witness "is mistaken" and his answers could not "possibly have" a "tendency to incriminate.").

To sustain the privilege, "'it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.'" *United States v. Bowling,* 239 F.3d 973, 977 (8th Cir. 2001) (*quoting Hoffman v. United States*, 341 U.S. at 486-87). The constitutional guarantee against testimonial compulsion extends not only to "answers that would in themselves support a conviction," but also to information that would "furnish a link in the chain of evidence that

could lead to prosecution." *Maness*, 419 U.S. at 461. Not much is required, therefore, to show an individual faces some authentic danger of self-incrimination, as the privilege "extends to admissions that may only tend to incriminate." *Emspak v. United States*, 349 U.S. 190, 197 (1955).

In order to "seek a rational accommodation between the imperatives of the [Fifth Amendment] privilege and the legitimate demands of government to compel citizens to testify," Congress has conferred statutory authority to grant use immunity to witnesses in order to obtain their testimony at trial. *See generally Kastigar v. United States*, 406 U.S. 441, 446 (1972). A witness may be compelled to testify if granted formal immunity that is "coextensive with the scope of the privilege" and "affords protection commensurate with that afforded by the privilege." *Id.* at 449. The power to grant immunity is vested in the prosecutor. *United States v. Washington*, 318 F.3d 845, 855 (8th Cir. 2003); *United States v. Warfield*, 97 F.3d 1014, 1020 (8th Cir.1996) (noting that use immunity can only be granted when it is formally requested by the Attorney General). A district judge lacks authority to offer immunity on its own. *See United States v. Bowling*, 239 F.3d 973, 976 (8th Cir. 2001) (noting that the Eighth Circuit has consistently refused to recognize the concept of judicial immunity).

Caselaw from other circuits indicates that prosecutor's decision to grant or refuse to grant immunity is constrained to some extent by the Due Process Clause. *United States v. Angiulo*, 897 F.2d 1169, 1192-93 (1st Cir. 1990); *see United States v. Hooks*, 848 F.2d 785, 799 (7th Cir.1988). If a prosecutor abuses discretion by intentionally attempting to distort the fact-finding process, then a due process violation exists and a court may order the prosecutor to grant immunity or face a judgment of acquittal. *See Angiulo*, 897 F.2d at

4

1192-93; *Hooks*, 848 F.2d at 799 (7th Cir.1988). This constraint operates at the margins of the prosecutor's discretion and takes on practical significance only when the prosecutor deliberately aspires to distort the fact-finding process. *United States v. Castro,* 129 F.3d 226, 232 (1st Cir. 1997). This type of deliberate distortion can occur in two ways: if the government attempts to intimidate or harass a potential witness, or if the prosecutor purposefully withholds use immunity to hide exculpatory evidence from the jury. *See id.*

The right to compulsory process is not absolute. *United States v. Mejia-Uribe,* 75 F.3d 395, 399 (8th Cir. 1996). Before a defendant is entitled to compulsory process, the defendant must show that the testimony of the witness is both material and favorable to the defense. *Id.* A defendant "must at least make some plausible showing of how [a witness's] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 867 (1982).

Also, due to the courtroom drama an invocation of Fifth Amendment creates, the jury is likely to place far too much emphasis upon an ambiguous invocation. *United States v. Reyes*, 362 F.3d 536, 542 (8th Cir. 2004). Thus, absent extraordinary circumstances, trial courts should exercise their discretion to forbid parties from calling witnesses who, when called, will only invoke a privilege. *Id.* Representation by the witness's counsel that the witness will invoke his Fifth Amendment rights is sufficient for the district court to refuse to compel that witness to appear. *United States v. Smart*, 501 F.3d 862, 866 (8th Cir. 2007).

In light of the foregoing, the court finds that it cannot compel Enriques to testify without a showing that his testimony would be material and favorable. If Enriques asserts his Fifth Amendment privilege, the court must determine whether Enriques has reasonable

cause to fear prosecution. If Enriques asserts the privilege and the court determines that he faces some authentic danger of self-incrimination, he will not be compelled to testify at trial. The court cannot compel the prosecution to grant him immunity unless he can show a deliberate distortion of the fact-finding process by the prosecution. The court finds that a hearing is necessary to allow the court to review the potential testimony outside the hearing of the jury. Accordingly,

IT IS ORDERED:

1. A hearing on this issue is scheduled for **September 25, 2009, at 8:45 a.m.,** Courtroom No. 3, Roman L. Hruska U.S. Courthouse, 111 South 18th Plaza, Omaha, Nebraska. **The defendant Devon Enriques must be present for this hearing**.

2. Defendant Marquita Jensen's motion for a writ of habeas corpus ad testificandum (Filing No. 84) is denied as moot.

DATED this 18th day of September, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.