IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | **8:08CR383** |
| vs. | |
| DEVIN M. ENRIQUES, | **MEMORANDUM AND ORDER** |
| Defendant. | |

This matter is before the court on the petitioner's (hereinafter, "defendant's") amended motion to vacate, set aside, or correct his sentence under § 2255. Filing No. 133. He challenges his conviction and his seven-year mandatory minimum sentence for using, carrying and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The defendant seeks relief under *Johnson v. United States*, 135 S. Ct. 2551 (2015). In *Johnson*, the Supreme Court invalidated the residual clause of the Armed Career Criminal Act of 1984 ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), which defined "violent felony" as a crime that "involves conduct that presents a serious potential risk of physical injury to another" as unconstitutionally vague in violation of due process of law. *Id.* at 2557. The Supreme Court found the clause unconstitutionally vague in violation of due process of law and consequently it is no longer enforceable. *Id.* The decision in *Johnson* was given retroactive effect in cases on collateral review by the Supreme Court. *Welch v. United States*, 136 S. Ct. 1257, 1265 (2016). The present motion is Mr. Enriques's first motion under 28 U.S.C. § 2255. The court held a hearing on June 23, 2016, and requested additional briefing on the effect of the recent Supreme Court

decision in *Mathis v. United States,* 136 S. Ct. 2243, 2248-49 (2016) (clarifying that where a crime has various means of committing a single element that is broader than the generic offense, that broader crime cannot serve as an ACCA predicate and noting that courts may only consider the elements that would have to be found by a jury or admitted—not mere alternative factual means by which a crime could be committed—in determining whether a prior conviction meets a federal statute's classification of prior offenses).

Enriques argues, in light of *Johnson* and *Mathis*, that his conviction for use of a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), is invalid.  He contends that bank robbery and conspiracy to commit bank robbery are not crimes of violence and can no longer be used as predicate crimes under 18 U.S.C. § 924(c).  He first contends that *Johnson* invalidates the residual clause of the "crime of violence" definition in 18 U.S.C. § 924(c)(3)(B) because that clause and the residual clause invalidated in *Johnson* are nearly identical.  Therefore, he argues that to be considered a crime of violence under § 924(c)(3), the offenses must fit within the "force clause" found in § 924(c)(3)(A).  He also contends, under *Mathis*, that the court must employ the "categorical approach"—focusing solely on whether the elements of the crime of conviction sufficiently match the elements of the generic crime and ignoring the particular facts of the case—in making the determination. *See Mathis,* 136 S. Ct. at 2248.  He argues that bank robbery does not categorically require the element of "use, attempted use, or threatened use of physical force against the person or property of another" because the statute also criminalizes bank robbery by intimidation and bank robbery by means of extortion.  Essentially, he contends that

2

the statutory elements of bank robbery are broader than the elements of the generic crime and accordingly, his conviction for bank robbery cannot count as a predicate crime of violence that supports his § 924(c) conviction.

The government argues that *Johnson* has no application to the defendant's case because the defendant's conviction for bank robbery qualifies as a crime of violence under the use-of-physical-force clause contained in § 924(c)(3)(A).  It cites *United States v. McNeal*, 818 F.3d 141, 152-53 (4th Cir. 2016), *pet. for cert. filed*, No. 16-5018 (June 23, 2016) in support of that proposition.  It further argues that nothing in *Mathis* undermines the reasoning of *McNeal*.

I.      FACTS

The defendant was charged in the Second Superseding Indictment with two counts of conspiracy to commit bank robbery and to use, carry and brandish a firearm in furtherance of that crime.  Filing No. 51, Second Superseding Indictment at 2.  Count 1 related to a robbery that occurred on September 4, 2008 and Count 2 related to a robbery that was to have occurred at the Tier One Bank located at 9775 Q Street in Omaha on October 6, 2008, but was cancelled.  *Id.* at 3-4.  Counts 3 and 4 of the Second Superseding Indictment charged as follows:

COUNT 3

13. On or about the 4th day of September, 2008, in the District of Nebraska, DEVIN M. ENRIQUES, did by force, violence, and intimidation, take from the person and presence of a teller and other employees, United States currency belonging to and in the care, custody, control, management and possession of the TierOne Bank, 8820 Arbor Street, Omaha, Nebraska, the deposits of which were then insured by the Federal Deposit Insurance Corporation.

       14. The above offense was committed and carried out in the course of, and in furtherance of, the conspiracy set forth in Count 1 of the Indictment and while MARQUITA JENSEN was a member of the conspiracy. In violation of Title 18, United States Code, Section 2113(a) and 2.

COUNT 4

       15. On or about the 4th day of September, 2008, in the District of Nebraska, DEVIN M. ENRIQUES, during and in relation to a crime of violence for which he may be prosecuted in a Court of the United States, did brandish a firearm, in that during the robbery of the TierOne Bank as charged in Count I of this Indictment, DEVIN M. ENRIQUES, did brandish and display a handgun.

       16. The above offense was committed and carried out in the course of, and in furtherance of, the conspiracy set forth in Count 1 of the Indictment and while MARQUITA JENSEN was a member of the conspiracy.

       In violation of Title 18, United States Code, Section 924(c)(1)(A)(ii) and 2.

Filing No. 51, Second Superseding Indictment at 5-6.  In his Petition to Enter a Plea of Guilty, in response to the inquiry "what acts did you do that cause you to think you are guilty of the charges of which you want to plead guilty?" the defendant responded, "I participated in bank robberies."  Filing No. 68, Petition to Enter a Plea of Guilty at 13.

Mr. Enriques pled guilty to Counts 1 through 4 of the Second Superseding Indictment on July 10, 2009.  Filing No. 72, Transcript of Plea Hearing ("Plea Hr'g Tr."). There is no plea agreement in this case.  *See* Filing No. 90, Presentence Investigation Report ("PSR") (sealed) at 7.  At the change of plea hearing, the court explained the elements that the government would have to prove if the defendant went to trial as follows:

       THE COURT: Now, with respect to Count III, they would have to prove that you actually committed the bank robbery, and that's the bank robbery at 88th and Arbor Street.

4

So they would have to prove that you took money from a person or teller or other employee of the Tier One Bank at 8820 Arbor Street. They would have to prove that you took it by force or violence or intimidation. And they would have to prove that the deposits of the Tier One Bank were then insured by the Federal Deposit Insurance Corporation. Do you understand that's what they would have to prove with respect Count III?

THE DEFENDANT: Yes, sir.

THE COURT: For Count IV they would have to prove that you committed the bank robbery at 8820 Arbor Street. That's the bank robbery in Count I and Count III. So they would have to prove that you committed the bank robbery. They would have to prove that when you committed the bank robbery, you used or carried a firearm during that bank robbery. Do you understand that's what they would have to prove?

THE DEFENDANT: Yes.

Filing No. 72, Plea Hr'g Trans. at 6-7. The defendant then stated that he freely and voluntarily gave up his rights. *Id.* at 14-15. The record shows the defendant offered an unconditional plea to Count 2, conspiracy to commit bank robbery of the TierOne bank at 97th and Q streets in Omaha. *Id.* at 16. He admitted he "worked with somebody else in order to rob the bank." *Id.* at 18. However, he offered an *Alford*-type plea to Counts 1, 3, and 4.[1]  *Id.* at 18. Defense counsel stated:

[DEFENSE COUNSEL]:  Judge, at this time Mr. Enriques would either plead no contest or do an *Alford*-type plea in regards to those counts.

THE COURT: An Alford plea, as I understand it, would be that Mr. Enriques pleads guilty, but is not willing to admit that he actually committed the crime; is that correct?

---

[1] The Federal Rules of Criminal Procedure allow defendants to plead *nolo contendere* with the permission of the court.  Fed. R. Crim. P. 11(a)(2)-(3).  Defendants may knowingly and voluntarily plead guilty even while protesting their innocence if the judge finds "strong evidence of [the defendant's] actual guilt."  *North Carolina v. Alford*, 400 U.S. 25, 26-27 (1970).

[DEFENSE COUNSEL]:  that's correct.

*Id.* at 17-18.  Defense counsel went on to explain:

[DEFENSE COUNSEL]:  Judge, Mr. Enriques and I have gone over the possible defenses at trial.

We believe that trial is not in his best interest due to the disparity in some of the guideline ranges and some of the possible arguments we would have at sentencing with regards to him.

Also I believe that part of the information that would be sought from Mr. Enriques would involve possible co-defendants or other people that are not in custody at this time.

And Mr. Enriques believes it's in his best interest not to either implicate or give any information that might come back to hurt him or his family in regards to that.

*Id.* at 18. The government then related the following factual basis:

[PROSECUTOR]: Yes, Your Honor. On October 5, 2008, a confidential informant contacted the Omaha Police Department and the FBI to provide information regarding a planned bank robbery that was to occur the following day.

The confidential informant stated that his longtime acquaintance, Devin Enriques, asked him to participate in robbing the Tier One Bank at 97th and Q Streets.

That particular Tier One Bank's deposits are insured by the Federal Deposit Insurance Corporation and is located within the District of Nebraska.

Mr. Enriques told the confidential informant that he and some others had already robbed the Tier One Bank at Arbor Street and gave details not known to the public about that robbery.

The Arbor Street branch had in fact been robbed on September 4, 2008, in the manner in which Enriques described.

The Arbor Street branch is also a Tier One Bank whose deposits were insured with the Federal Deposit Insurance Corporation and located within the District of Nebraska.

6

At that particular scene evidence was collected, physical evidence was collected, and compared against DNA analysis taken from Devin Enriques, and there was a consistency between the physical evidence and Mr. Enriques' DNA.

Through the investigation the officers learned that a Marquita Jensen, who was a Tier One Bank teller, was the girlfriend of Devin Enriques at the time alleged within the superseding indictment.

She was working at the Arbor Street branch on September 4, 2008, and was seen on the surveillance tape leaving the teller area moments before the robbery occurred.

Ms. Marquita Jensen indicated to law enforcement officers that she suspected Mr. Enriques of robbing the bank on that occasion because he had asked her about security details about the bank, which she advised him about the security protocol at the Tier One branch on Arbor Street.

On October 6th, 2008, the date that the confidential informant indicated to law enforcement that the Tier One Bank at 97th and Q was going to be robbed by Devin Enriques, Ms. Jensen was working at that particular location.

The officers ended up going to that location and the bank was advised that a robbery was planned to have occurred later in the afternoon and the branch ended up shutting down for the day.

The robbery never did in fact occur; however, what law enforcement did learn is that Marquita Jensen, who was working at that location, text-messaged Enriques when the police were at the bank and advised him that the police were there and that a robbery was supposed to occur.

Ms. Jensen indicated that once again she told Mr. Enriques about security features at the 97th and Q Tier One location.

Mr. Enriques was interviewed on October 6th, 2008, and denied getting any security information from Ms. Jensen.

However, the following day on October 7th, 2008, Mr. Enriques once again approached the confidential informant and asked him for help in destroying evidence that was related to the Arbor Street bank robbery.

7

> Mr. Enriques and the confidential informant went to the Lake Cunningham area where Mr. Enriques had attempted to burn a pair of tennis shoes and black ski masks.
>
> When the burn was unsuccessful, Mr. Enriques threw all the items into the lake.
>
> The ski masks and the tennis shoes were recovered by the FBI.
>
> Surveillance photos from the Arbor Street branch show two armed robbers with black ski masks covering their faces, and one of the robbers had on tennis shoes that appeared to be similar to those that Enriques attempted to burn.
>
> The surveillance video from the Arbor Street branch, Your Honor, shows three individuals entering the branch, all of them wielding firearms.
>
> I believe that would be the sum total of the factual basis to support all four counts in the indictment, Your Honor.

*Id.* at 22-25.   The court then accepted the guilty plea on all counts, finding "[t]here is an independent basis in fact concerning each of the essential elements."  *Id.* at 26.  On October 6, 2009, this court entered a judgment on Counts 1-4 of the Second Superseding Indictment.  Filing No. 92, Judgment.

Enriques was sentenced to imprisonment of sixty months on Count 1 and sixty months on Count 2 to be served concurrently; to seventy-two months on Count 3 to be served concurrently, and to eighty-four months on Count 4 to be served consecutively to Counts 1-3.  *Id.*  Filing No. 92.  An Amended Judgment adding restitution of $5,348.00 was entered on May 3, 2010, but did not otherwise affect the previously entered judgment.  Filing No. 114, Amended Judgment.  Mr. Enriques did not appeal his conviction or sentence.

II.     LAW

    A.     Section 2255 Standards

8

Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who moves to vacate, set aside or correct his sentence on any of the following grounds: (1) that the sentence was imposed in violation of the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). Section 2255 provides a person in federal custody with a limited opportunity to collaterally attack the constitutionality, jurisdictional basis, or legality of his sentence. *See United States v. Addonizio*, 442 U.S. 178, 185 (1979). Relief is reserved for violations of constitutional rights and for a narrow range of injuries that are outside the ambit of a direct appeal and which, if untreated, would result in a miscarriage of justice. *See Poor Thunder v. United States*, 810 F.2d 817, 821–22 (8th Cir. 1987).

### B.    The ACCA – Career Offender Enhancement

The ACCA provides a fifteen-year mandatory minimum sentence for an offender convicted of three prior violent felonies. 18 U.S.C. § 924(e). For purposes of that provision, the term "violent felony" is defined as

> any crime punishable by a term of imprisonment exceeding one year that:
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). [2]   The first prong of this definition is sometimes referred to as the "elements" or "use-of-force" clause and the second prong contains the "enumerated crimes" clause followed by what is commonly known as the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

In *Johnson*, the Supreme Court invalidated the ACCA residual clause as unconstitutionally vague. *Johnson*, 135 S. Ct. at 2557–58, 2563. Accordingly, imposing an increased sentence pursuant to the residual clause of the ACCA, 18 § 924(e)(2)(B)(ii), violates due process under the Fifth Amendment. *Id.* at 2563. In holding that the ACCA's residual clause is void, the Supreme Court did not call into question the application of the elements (or use-of-force) or the enumerated crimes clauses of the ACCA's definition of a violent felony. *Id.*

The Supreme Court found "[t]wo features of the residual clause conspire[d] to make it unconstitutionally vague." *Id.* at 2557. One was grave uncertainty about "how to estimate the risk posed by a crime" because it tied judicial assessment of risk "to a

---

[2] The first clause of the definition roughly corresponds to the general definition of "crime of violence" found in 18 U.S.C. § 16, which provides:

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

18 U.S.C. § 16(a).   The Eighth Circuit has held "the definition of 'crime of violence' in Section 16 is 'virtually identical' to the definition of a 'crime of violence' in U.S.S.G. § 4B1.2(a) and 'violent felony' in the Armed Career Criminals Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i)." *Ortiz v. Lynch*, 796 F.3d 932, 935 (8th Cir. 2015) (applying categorical approach to a prior conviction in the context of immigration proceedings). The ACCA force clause differs from § 16(a) only in that it does not include crimes involving force against property. 18 U.S.C. § 924(e); *see United States v. Yanes-Cruz*, 634 Fed. App'x 247, 251 n.22 (11th Cir. 2015). Three circuit courts—the Sixth, Seventh, and Ninth—have applied *Johnson* to prior convictions under immigration statutes that invoke the criminal code's parallel definition of crime of violence and determined that the provision is void for vagueness. *See, e.g., Shuti v. Lynch*, No. 15-3835, 2016 WL 3632539, at *4-*5 (6th Cir. July 7, 2016); *United States v. Vivas–Ceja*, 808 F.3d 719, 720 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1111 (9th Cir. 2015); *see also United States v. Gonzalez-Longoria,* 813 F.3d 225, 229-30, *rehearing en banc granted*, 815 F.3d 189 (Mem.)(5th Cir. 2016).

judicially imagined 'ordinary case' of a crime" instead of "real-world facts or statutory elements." *Id.* Also, the residual clause left uncertainty "about how much risk it takes for a crime to qualify as a violent felony," noting that "[i]t is one thing to apply an imprecise 'serious potential risk' standard to real-world facts; it is quite another to apply it to a judge-imagined abstraction." *Id.* at 2558; *see, e.g., In re Clayton*, 2016 WL 3878156, at *7 (11th Cir. July 18, 2016) (Martin, J. concurring in result) (stating that "*Johnson* does not invalidate everything that 'could be described as vague[,]'" but addresses "a far more distinct problem: laws that require judges to apply overly vague standards" to a judicially imagined ordinary case of a crime, not to real-world facts.).

The judge's role in applying a typical criminal statute to a defendant who commits a crime is to "appl[y] the law to the facts in the case before him." *United States v. Gonzalez-Longoria*, 813 F.3d 225, 229-30, *rehearing en banc granted*, 815 F.3d 189 (Mem.)(5th Cir. 2016) (noting, "[f]or example, if a law criminalizes 'manufacturing a controlled substance' in a way that creates 'substantial risk of harm to human life,' the judge [or jury] determines whether the facts in this case showed that the defendant before him created a 'substantial risk of harm to human life.'") In contrast, in a vagueness challenge under *Johnson,* a court must ask, first, whether the statute requires the analysis of an imaginary, archetypical case to determine whether a crime is a crime of violence, and "then adjudicate that archetypical case by the standard provided in the same statute." *Id.* at 231. If applying the statute does not require "a court to set aside the actual facts before it, and to imagine the conduct that would be committed in an archetypical case of the crime under consideration," that is, "if the court is free to look at the facts of the case before it—then *Johnson* does not apply." *Id.* at

231.   "The *Johnson* Court did 'not doubt the constitutionality of laws that call for the application of a qualitative standard such as "substantial risk" to real-world conduct.'" *United States v. Prickett*, No. 15-3486, 2016 WL 4010515, at *1 (8th Cir. July 27, 2016) (quoting *Johnson*, 135 S. Ct. at 2561).  The ACCA's residual clause "failed not because it adopted a 'serious potential risk' standard but because applying that standard under the categorical approach required courts to assess the hypothetical risk posed by an abstract generic version of the offense."  *Welch*, 136 S. Ct. at 1262.  "The Court's analysis in *Johnson* thus cast no doubt on the many laws that 'require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion.'" *Id.*

### C.   Categorical/Modified Categorical Approaches

The Supreme Court has recognized two approaches to determining whether a state crime qualifies as a predicate crime under the ACCA:  the categorical approach and the modified categorical approach.  *Descamps v. United States*, 133 S. Ct. 2276, 2281 (2013).[3]   The categorical approach is confined to an examination of the text of the state's criminal prohibition to determine whether it is identical to or narrower than the generic crime under the ACCA.  *Id.*  If so, a conviction under the state statute qualifies as an ACCA predicate.  *Id.*

The modified categorical approach permits a court to "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and

---

[3] The categorical approach was adopted in *Taylor v. United States*, 495 U.S. 575, 599–602 (1990), and reaffirmed in five residual-clause cases, *see James v. United States*, 550 U.S. 192, 202 (2007); *Begay v. United States*, 553 U.S. 137, 141 (2008); *Chambers v. United States*, 555 U.S. 122, 125 (2009); and *Sykes v. United States*, 564 U.S. 1, 7-8 (2011), and *Johnson*, 135 S. Ct. at 2557.

colloquy) to determine what crime, with what elements, a defendant was convicted of."
*Mathis*, 136 S. Ct. at 2249.  The modified categorical approach is only available in a
very limited circumstance to achieve a very limited purpose; where the state statute is
divisible—i.e. it proscribes multiple crimes with different elements—the modified
categorical approach can be employed to determine which crime pertains to the
defendant's actual conduct.  *Id.*  Once that determination is made, the purpose of the
modified categorical approach is at an end. *Id.*

The court must then use the categorical approach to determine whether the
statutory elements of the crime of conviction so determined are equal to or narrower
than the ACCA generic crime.  *Id.*  If the statutory elements permit a conviction for a
crime that is not within the scope of the ACCA generic crime then it cannot be used as
an ACCA predicate and that is true even if the modified categorical approach would
demonstrate that in fact the actual conduct of the defendant was fully consistent with the
generic crime.  *Id.* at 2248.

The Supreme Court, in *Mathis,* holds that application of the ACCA involves, and
involves only, comparing elements.  136 S. Ct. at 2257; *Gomez-Perez v. Lynch*, 2016
WL 3709757, at *3 (5th Cir. July 11, 2016).  The Court explains:

> Distinguishing between elements and facts is therefore central to ACCA's
> operation.  "Elements" are the "constituent parts" of a crime's legal
> definition—the things the "prosecution must prove to sustain a conviction."
> Black's Law Dictionary 634 (10th ed. 2014). At a trial, they are what the
> jury must find beyond a reasonable doubt to convict the defendant, *see
> Richardson v. United States, 526 U.S. 813, 817, 119 S. Ct. 1707, 143
> L.Ed.2d 985 (1999);* and at a plea hearing, they are what the defendant
> necessarily admits when he pleads guilty, *see McCarthy v. United States,
> 394 U.S. 459, 466, 89 S. Ct. 1166, 22 L.Ed.2d 418 (1969)*. Facts, by
> contrast, are mere real-world things—extraneous to the crime's legal
> requirements.  (We have sometimes called them "brute facts" when

13

> distinguishing them from elements. *Richardson*, 526 U.S., at 817, 119 S.
> Ct. 1707.)  They are "circumstance[s]" or "event[s]" having no "legal effect
> [or] consequence":  In particular, they need neither be found by a jury nor
> admitted by a defendant.  Black's Law Dictionary 709.  And ACCA, as we
> have always understood it, cares not a whit about them.

*Mathis,* 136 S. Ct. at 2248.  This entails looking at the offense categorically—"in terms of how the law defines the offense," not how the individual "committed it on a particular occasion."  *Begay v. United States*, 553 U.S. 137, 141 (2008).

Three basic reasons form the foundation for the Supreme Court's adherence to the "elements-only inquiry":  (1) the text of the ACCA, (2) Sixth Amendment concerns, and (3) fairness to defendants.  *Mathis*, 136 U.S. at 2252-53; *Gomez-Perez*, 2016 WL 3709757, at *2 (noting that *Mathis* restricted the modified categorical approach to an elements-only inquiry for a few reasons: one is that a federal statute's focus on "convictions" indicates a concern with "whether 'the defendant ha[s] been convicted of crimes falling within certain categories,' and not about what the defendant ha[s] actually done" and another is the unfairness that would result from using "[s]tatements of 'non-elemental facts' " against a defendant in a future proceeding when the defendant had no incentive (and sometimes no opportunity) to contest them at the time of conviction) (internal citations omitted).  Sixth Amendment concerns stem from the Supreme Court's holding that "only a jury, and not a judge, may find facts that increase a maximum penalty, except for the simple fact of a prior conviction."  *Mathis*, 136 S. Ct. at 2252.; *see Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

This elements-centric approach "became a mantra" in ACCA and immigration cases.  *Mathis*, 136 U.S. at 2251 & n.2.  "[T]he ACCA was written to avoid requiring a

factual inquiry so that courts can sentence career offenders without delving into the specific conduct of their past offenses." *Gonzalez-Longoria*, 813 F.3d at 230; *see Mathis*, 136 S. Ct. at 2253 (stating the ACCA treats facts as irrelevant); *Taylor v. United States*, 495 U.S. 575, 600 (1990) (stating that the categorical approach is an abstract mode of analysis, mandated by Congress's focus on the historical fact of prior conviction).

"That means a judge cannot go beyond identifying the crime of conviction to explore the manner in which the defendant committed that offense." *Mathis*, 136 S. Ct. at 2252. "He is prohibited from conducting such an inquiry himself; and so too he is barred from making a disputed determination about 'what the defendant and state judge must have understood as the factual basis of the prior plea' or 'what the jury in a prior trial must have accepted as the theory of the crime.'" *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 28 (2005)). A judge "can do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of." *Id.*

      D.   18 U.S.C. § 924(c) - Firearm Offense

Distinct from the provisions of § 924(e)(1) of the ACCA, "[a] federal criminal statute, § 924(c) of Title 18, prohibits 'us[ing] or carr[ying]' a firearm 'during and in relation to any crime of violence or drug trafficking crime.'" *Rosemond v United States*, 134 S. Ct. 1240, 1243 (2014). Section 924(c) provides for a five-year mandatory-minimum sentence, with seven-year and ten-year minimum sentences applicable, respectively, if the firearm is also brandished or discharged. 18 U.S.C. § 924(c)(1)(A). Further, the sentence cannot "run concurrently with any other term of imprisonment

15

imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed." 18 U.S.C. § § 924(c)(1)(D).

For the purposes of § 924(c), a "crime of violence" is defined as an offense that is a felony and:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 924(c)(3)(A)&(B).   The former clause is referred to as the "use-of-force" clause or the "elements" clause and the latter clause as the "§ 924(c)(3)(B) residual clause" or the "risk-of-force clause."   *See, e.g., In re Saint Fleur*, No. 16–12299, 2016 WL 3190539, at *3–4 (11th Cir. June 8, 2016); *In re Chance*, Nos. 16-13918-J/16-14643-J, 2016 WL 4123844, at *1 n.2 (11th Cir. Aug. 2, 2016).   The definition of "crime of violence" in § 924(c)(3)(A) requires the element of "physical force," which has been construed as meaning violent force.   *See Johnson v. United States*, 559 U.S. 133, 140 (2010) (hereinafter, "*Johnson I*") (finding that the phrase "physical force" in § 924(e)(2)(B)(i) means "*violent* force—that is, force capable of causing physical pain or injury to another person[,]" given its "context of a statutory definition of 'violent felony'") (emphasis in original); *cf. United States v. Castleman*, 134 S. Ct. 1405, 1409-13 (2014) (distinguishing *Johnson I* in the context of a misdemeanor crime of domestic violence).

Although "[t]he residual clause of the ACCA does resemble the residual clause of § 924(c)(3)[,]" the clauses "function in importantly different contexts."   *Prickett*, 2016 WL

16

4010515, at *1 (finding that applying a qualitative standard such as "substantial risk" under § 924(c)(3)(B) to real world facts rather than to "an idealized ordinary case of the crime" does not implicate *Johnson*). "Section 924(c)(3)(B) is the very type of statute that the *Johnson* Court explained would not be unconstitutionally vague under its holding." *Id.* Accordingly, the residual clause found in § 924(c)(3)(B) is not unconstitutionally vague. *Id.*; *see also United States v. Hill,* No. 14-3872-cr, 2016 WL 4120667, at *8-*9 (2d Cir. Aug 3, 2016) (holding § 924(c) residual clause not void for vagueness); *United States v. Fox*, 2016 WL 3033067, at *2 (11th Cir. May 27, 2016) (finding it is not "clear that Johnson's reasoning regarding the ACCA's residual clause applies with equal force to § 924(c)(3)(B)," and noting that "*Johnson* did not expressly invalidate the crime-of-violence definition in § 924(c)(3)(B) or even broadly condemn criminal laws using risk-based terms."); *United States v. Taylor*, 814 F.3d 340, 379 (6th Cir. 2016) (rejecting vagueness challenge to § 924(c)(3)(B) because several factors distinguish the ACCA residual clause from § 924(c)(3)(B)); *cf. United States v. Vivas–Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015) (both applying categorical approach to a prior conviction in immigration context and holding that the identically worded language in the definition of "aggravated felony" found in 8 U.S.C. § 1101(a)(43)(F), which incorporates by cross-reference the definition of "crime of violence" in 18 U.S.C. § 1618 U.S.C. § 16(b), is unconstitutionally vague.).

The categorical approach does not apply to pretrial determinations as to whether a crime qualifies as a § 924(c) crime of violence. *United States v. McDaniels*, 147 F. Supp.3d 427, 432 (E.D. Va. 2015) ("crime of violence" is an element of § 924(c)— rather than a sentencing factor—and must be submitted to a jury and found beyond a

17

reasonable doubt);   *United States v. Wells*, No. 2:14-cr-00280-JCM-GWF, 2015 WL 10352877, at *4 (D. Nev. Dec. 30, 2015) (same, finding *McDaniels* analysis persuasive); *United States v. Checora*, No. 2:14cr457DAK, 2015 WL 9305672, *2 (D. Utah Dec. 21, 2015) ("This court agrees with the reasoning of the courts questioning whether the categorical approach is appropriate in the context of a § 924(c)(3) case, especially in the context of deciding a pretrial motion to dismiss."); *United States v. Church*, No. 1:15-CR-42-TLS, 2015 WL 7738032, at *6 (N.D. Ind. Dec. 1, 2015) (categorical approach is not applicable to § 924(c) because the statute does not require a sentencing court to make a determination based on a *previous* conviction) (emphasis in original); *United States v. Standberry*, 139 F. Supp. 3d 734, 737 (E.D. Va. 2015) (noting that cases in which the categorical approach has been utilized outside the sentencing contexts are sparse).

E.     Bank Robbery as a Crime of Violence

The federal criminal statute governing bank robbery provides:

> Whoever, by force and violence, or by intimidation, takes, or attempts to take, from the person or presence of another, or obtains or attempts to obtain by extortion any property or money or any other thing of value belonging to . . . any bank . . . Shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C.A. § 2113(a) (2015).   The word "intimidation" implies a threat calculated to place the victim in fear.   *Virginia v. Black*, 538 U.S. 343, 360 (2003).   The "prosecution must prove that the defendant possessed 'general intent—that is . . . knowledge'—with respect to taking the property by intimidation.'"   *United States v. McBride*, Nos. 15-3759, 15-3761, 15-3762, 15-3763, 15-3764, 2016 WL 3209496, at *2 (6th Cir. June 10, 2016). "The defendant must at least know that his actions would create the impression in an

18

ordinary person that resistance would be met by force. *Id.* at *2. "A taking by intimidation under § 2113(a) therefore involves the threat to use physical force." *Id.*

In the Eighth Circuit, bank robbery is indisputably a crime of violence. *United States v. Johnson*, 962 F.2d 1308, 1311 (8th Cir. 1992). A conspiracy to commit a crime of violence is itself a violent crime. *Id.* Numerous other courts have found robbery, armed robbery, and bank robbery are crimes of violence under the "force" or "elements" clause, § 924(c)(3)(A). *See, e.g., Hill,* 2016 WL 4120667, at *1 (Hobbs Act robbery is a crime of violence under 18 U.S.C. § 924(c)(3)(A)); *In re Sams,* No. 16-14515-J, 2016 WL 3997213, at *3–4 (11th Cir. July 26, 2016) (bank robbery by force and violence and intimidation is a crime of violence under 18 U.S.C. § 924(c)(3)(A)); *In re Hunt,* No. 16-14756-J, 2016 WL 3895246, at *1 (11th Cir. July 18, 2016) (holding that armed bank robbery is a "crime of violence" under the elements clause of § 924(c)(3)); *In re Colon,* Nos. 16–13021–J, 16–13264–J, 2016 WL 3461009, at *3 (11th Cir. June 24, 2016) (a companion conviction for aiding and abetting a Hobbs Act robbery clearly qualifies as a "crime of violence" under the use-of-force clause in § 924(c)(3)(A), without regard to the § 924(c)(3)(B) residual clause; *United States v. McBride*, Nos. 15-3759/15-3761/15-3762/15-3763/15-3764, 2016 WL 3209496, at *2 (6th Cir. June 10, 2016) (bank robbery by "force and violence" plainly involves "the use, attempted use, or threatened use of physical force," and a taking by intimidation under § 2113(a) involves the threat to use physical force); *In re Hubbard*, No. 15-276, 2016 WL 3181417 at *2 (4th Cir. June 8, 2016) (bank robbery supports a § 924(c) conviction); *Royal v. Tombone*, 141 F.3d 596, 602 (5th Cir. 1998) (noting that a bank robbery conviction under § 2113(a) "includes as a necessary element the use of force and violence or

19

intimidation"); *In re Hines*, No. 16-12454-F, 2016 WL 3189822, at *3 (11th Cir. June 8, 2016) (a companion conviction for armed bank robbery clearly qualifies as a "crime of violence" under § 924(c)(3)(A) if the record demonstrates that the elements of the crime are satisfied); *In re Saint Fleur*, No. 16-12299-J, 2016 WL 3190539, at *3–4 (11th Cir. June 8, 2016) (concluding that Hobbs Act robbery under 18 U.S.C. § 1951 is a crime of violence under § 924(c)(3)(A)'s force clause); *Fox*, 2016 WL 3033067, at *2 (bank robbery under § 2113(a) qualifies as a crime of violence as defined by § 924(c)(3)(A)); *McNeal*, 818 F.3d at 153 (a bank robbery conviction under § 2113(a) qualifies as a "crime of violence" under the § 924(c)(3)(A) use-of-force clause because (1) bank robbery "by force and violence" requires the use of physical force, bank robbery "by intimidation" requires the threatened use of physical force, and "[e]ither of those alternatives includes an element that is the use, attempted use, or threatened use of physical force") (citations omitted); *see also United States v. Wright*, 215 F.3d 1020, 1028 (9th Cir. 2000) (armed bank robbery qualifies as a crime of violence because § 2113(a) requires a taking by force and violence, or by intimidation); *United States v. Jones*, 932 F.2d 624, 625 (7th Cir. 1991) ("There is no 'space' between 'bank robbery' and 'crime of violence'" under the physical-force clause of § 4B1.2(a)); *United States v. Selfa*, 918 F.2d 749, 751 (9th Cir. 1990) (federal bank robbery statute, which may be violated by "force and violence, or by intimidation," qualifies as a crime of violence under U.S.S.G. § 4B1.2.2 which uses the nearly identical definition of "crime of violence" as § 924(c)).

III.    DISCUSSION

20

Under Eighth Circuit precedent, the court finds the § 924(c) residual clause is not void for vagueness under *Johnson*.  *See Prickett*, 2016 WL 4010515, at *1.  Where a companion conviction is the predicate crime that underlies the 924(c) conviction, the *Johnson* rationale and holding are not applicable.  Under the present circumstances, the qualitative standard of "substantial risk" is applied to the defendant's real world conduct and not to an abstraction.  None of the concerns that animated the Supreme Court's decisions in *Taylor*, *Johnson*, and *Mathis* are present here.  This is not a situation where a district court must determine whether a past offense adjudicated before a different tribunal conforms to a particular statutory definition.  The conduct at issue—to which the defendant has admitted—is based on the factual basis for his plea and the underlying offense conduct as related by the prosecutor, summarized in the presentence investigation report, and admitted by the defendant at the plea hearing.

This court's acceptance of the defendant's *Alford*-type plea is a recognition that there was strong evidence of his guilt.  The court found the facts sufficient to meet the elements of the offenses charged in all four counts of the indictment.  The defendant was charged herein with taking U.S. currency in the care, custody, and control of TierOne Bank from a teller and other employees by "force, violence, and intimidation." He understood that in order to convict him of the predicate crime, the government would have to prove beyond a reasonable doubt all of the elements of the charge, including that the robbery had been committed with force, violence, or intimidation.  It is clear that the underlying offense of bank robbery, as this defendant committed it on the particular occasion at issue involved a "substantial risk that physical force against the person or

property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).

Because the court finds the categorical approach does not apply when considering whether an offense qualifies as a crime of violence under § 924(c), it need not address the defendant's argument that bank robbery under 18 U.S.C. § 2113 is broader than the generic crime because the statute also criminalizes bank robbery by intimidation and bank robbery by means of extortion. Let it suffice to say that the defendant was charged with, and admitted to, robbery by force and intimidation. The fact that the statute could arguably be violated by conduct encompassing extortion has no applicability to the defendant's case because he was not charged with bank robbery by extortion.

The categorical approach is generally applied only in the sentencing context. The reasons for employing the categorical approach as the "only plausible interpretation" of the law do not exist outside the context of sentencing under recidivist statutes or enhancements. Johnson, 135 S. Ct. at 2562. Section 924(c) is not a recidivist statute, but is a separate, substantive crime. The issue presently before the court is essentially whether the government has established, beyond a reasonable doubt, the elements of the charges levelled at the defendant in this case. The court is not asked to conduct a cold review of a prior conviction to determine whether its elements square with the statutory definition of § 924(c). The court is merely applying the law to the facts in the case presently before it, as it does in every criminal case. This determination does not require the court to set aside the actual facts before it, and to imagine the conduct that would be committed in an archetypical case of bank

22

robbery.  The categorical approach is necessary, in the context of ACCA sentencing enhancements, to avoid the difficult or impossible situation where a sentencing court would be required to re-try the factual basis for a prior conviction.  This case does not involve a prior conviction, it involves a conviction adjudicated by this court—the companion crime to the defendant's firearm offense.  The court did not make an abstract retrospective finding, but had the benefit of viewing the facts and admissions as presented in this case.

The line of cases culminating in *Mathis* and *Johnson* all had to do with the fundamental fairness of applying a recidivist enhancement to a criminal conviction, in the context of findings made in a prior proceeding.  A § 924(c)(3) determination does not require the court to make a determination based on the historical fact of a prior conviction.  Even the practical difficulties and inequities that motivated the adoption of the categorical approach are not present here.  There is no danger that the district court will expend resources attempting to determine facts the defendant admitted from consulting old or incomplete documents to satisfy an element of a generic offense.  This court is fully capable of determining, with respect to the predicate crime, whether the constitutional requirements have been met.

Notwithstanding the residual clause, the court further finds that the overwhelming weight of authority dictates the finding that bank robbery and conspiracy to commit bank robbery are crimes of violence under the elements or use-of-force clause, § 924(c)(3)(A).   The use-of-force clause does not suffer from the same infirmities as the ACCA residual clause.  Like the ACCA's force (or elements) clause, the § 924(c)(3)(A) force clause requires a court to focus on the elements.  As such, the offense has as an

23

element, "the use, attempted use, or threatened use of physical force against the person . . . of another," which is all that is required to satisfy the definition of "crime of violence" under the force clause.  Accordingly, the court finds the defendant's amended motion to vacate, set aside, or correct his sentence under § 2255 should be denied.

The defendant must make a substantial showing of the denial of a constitutional right in order to be granted a certificate of appealability in this case.  *See Miller-El v. Cockrell*, 537 U.S. 322 (2003).  "A substantial showing is a showing that issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings." *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). Moreover, "'[w]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)). The court finds the defendant's motion does not present questions of substance for appellate review and, therefore, does not make the requisite showing to satisfy § 2253(c).  *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b).  Accordingly, no certificate of appealability pursuant to 28 U.S.C. § 2253(c) will issue.  Should the defendant wish to seek further review of his petition, he may request a certificate of appealability from a judge of the United States Court of Appeals for the Eighth Circuit. *See Tiedman v. Benson, 122 F.3d 518, 520-22 (8th Cir. 1997).*

IT IS ORDERED:

1.      The defendant's amended motion to vacate, set aside, or correct his sentence under § 2255 (Filing No. 133) is denied.

24

2.      No certificate of appealability pursuant to 28 U.S.C. § 2253(c) will issue.

3.      This action is dismissed.

4.      A judgment in conformity with the Memorandum and Order will issue this date.

Dated this 12th day of August, 2016

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge

25